### UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

|  |  |
|---|---|
| **JOSEPH COON,** | **C.A. No.:** |
| **Plaintiff,** | |
| **v.** | **COMPLAINT** |
| **RESURGENT CAPITAL SERVICES, LP and LVNV FUNDING, LLC,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff Joseph Coon, by and through the undersigned counsel, complains, states, and alleges against defendants Resurgent Capital Services, LP and LVNV Funding, LLC, as follows:

### INTRODUCTION

1.      This is an action to recover damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA").

2.      In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 USC §§ 1692 *et seq.*, in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) and (c).

3.      Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "ensure that those debt collectors who refrain from using

1

abusive debt collection practices are not competitively disadvantaged." *Id.*, § 1692(e).   After determining that the existing consumer protection laws were inadequate, Congress gave consumers a private cause of action against debt collectors who failed to comply with the Act.  *Id.*, § 1692k.

4.       In determining whether a collection letter violates the FDCPA, courts in the Third Circuit apply the "least sophisticated consumer standard." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). The standard is an objective one, meaning the specific consumer need not prove that she was actually confused or misled. See *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused.").

5.       The FDCPA does not ordinarily require proof of an intentional violation, and is considered a strict liability statute, whereby a single violation is sufficient to establish civil liability against a debt collector.

## JURISDICTION AND VENUE

6.       This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d).

7.       This court has jurisdiction over defendants Resurgent Capital Services, LP and LVNV Funding, LLC because a substantial part of the conduct complained of herein occurred in this Judicial District.

8.       Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because a defendant LVNV Funding, LLC resides in this Judicial District and a substantial part of the conduct complained of herein occurred in this Judicial District.

## PARTIES

9.       Plaintiff Joseph Coon ("Plaintiff") is a natural person who is a citizen of the State

of Tennessee.

10.     Plaintiff is a "consumer" as that term defined by 15 U.S.C. § 1692a(3).

11.     Defendant Resurgent Capital Services, LP ("RCS") is a company existing under the laws of the State of South Carolina, with its principal place of business in Columbia, South Carolina.

12.     RCS regularly collects or attempts to collect debts asserted to be owed to others.

13.     RCS is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

14.     The principal purpose of RCS's business is the collection of such debts.

15.     RCS uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

16.     RCS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

17.     Defendant LVNV Funding, LLC ("LVNV") is a company existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware.

18.     LVNV has transacted business within this state as is more fully set forth hereinafter in this Complaint.

19.     LVNV regularly collects or attempts to collect debts asserted to be owed to others.

20.     LVNV is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

21.     The principal purpose of LVNV's business is the collection of such debts.

22.     LVNV uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

23.     LVNV is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

24.   RCS and LVNV are hereinafter collectively referred to as the "Defendants."

25.   The acts of the Defendants as described in this Complaint were performed by the Defendants or on Defendants' behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to "Defendants" in this Complaint shall mean Defendants or their owners, officers, agents, and/or employees.

## FACTUAL ALLEGATIONS

26.   Defendants allege Plaintiff owes a debt to LVNV for a personal credit card account with Synchrony Bank ("Synchrony").

27.   In an attempt to collect the alleged debt, RCS sent Plaintiff a letter on behalf of LVNV.

28.   But, prior to RCS sending the letter, Plaintiff retained counsel to assist Plaintiff with the Synchrony debt.

29.   On August 7, 2018, Plaintiff's counsel, The Ferrer Law Firm, PA, notified Synchrony of its representation of Plaintiff and demanded all further communications to cease directly with Plaintiff.

30.   In fact, thereafter, counsel for Synchrony acknowledged Plaintiff's counsel's representation of Plaintiff.

31.   Sometime thereafter, the alleged debt was allegedly sold, transferred, and/or assigned to LVNV Funding, LLC ("LVNV") for purposes of collection.

32.   It is standard practice for a creditor to inform downstream entities of attorney representations and cease and desists.

33.   RCS alleges LVNV is the current creditor of the alleged debt.

34.   Upon information and belief, LVNV was notified by Synchrony of Plaintiff's

4

attorney's representation in the sale file(s).

35.     Upon information and belief, LVNV was notified by Synchrony of the cease and desist in the sale file(s).

36.     Thereafter, LVNV placed, transferred, and/or assigned the alleged debt to RCS for purposes of collection on behalf of LVNV.

37.     Upon information and belief, RCS was notified of Plaintiff's attorney's representation either in the placement file(s) or via the client portal LVNV provides the debt collectors it retains to collect debts on its behalf.

38.     Upon information and belief, RCS was notified of Plaintiff's cease and desist either in the placement file(s) or via the client portal LVNV provides the debt collectors it retains to collect debts on its behalf.

39.     Alternatively, if RCS did not receive notice of Plaintiff's attorney's representation and/or cease and desist when LVNV transferred, assigned, or placed the debt with RCS for purposes of collection on behalf of LVNV and did not have access to Plaintiff's attorney's representation and/or cease and desist via LVNV's client portal it provides to its debt collectors, then RCS intentionally or negligently lacks sufficient policies and procedures because it failed to inquire with LVNV prior to attempting to collect the debt from Plaintiff whether Plaintiff was represented by counsel and/or whether Plaintiff previously provided a written cease and desist from further communications directly with Plaintiff.

40.     In spite of Plaintiff's counsel's representation, RCS sent a letter directly to Plaintiff on behalf of LVNV, dated June 3, 2022.

41.     In fact, Defendants have a pattern and practice of contacting consumers directly who are represented by counsel.

42.     In spite of Plaintiff's cease and desist, RCS sent a letter directly to Plaintiff on behalf of LVNV, dated June 3, 2022.

43.     In fact, Defendants have a pattern and practice of contacting consumers who have previously provided a written cease and desist from further communication.

44.     The letter alleged that Plaintiff no longer owed money to Synchrony Bank, but now owed $9,166.72 to LVNV.

45.     However, Plaintiff was never indebted to LVNV, and was never indebted to LVNV for $9,166.72.

46.     According to data provided by the Consumer Financial Protection Bureau (the "CFPB"), consumer complaints about debt buyers and collectors attempting to collect money not actually owed by the consumer are by far the most common of all complaints received by the Bureau every year.  LVNV and its related companies are at the top for the entire country in terms of the volume of such complaints.

47.     LVNV is a shell company.  LVNV has no employees.  LVNV has no collection agreements.  Instead, along with at least a dozen other shell companies including Pinnacle Credit Services, Resurgent Funding, CACH, Ashley Funding Services, PYOD, Resurgent Receivables, and Sherman Originator, LVNV is controlled by Resurgent Capital Services ("Resurgent Capital"). Employees of Resurgent Capital act as unpaid "representatives" of LVNV and the other shell companies through what the employees believe is a "limited power of attorney."  These "representatives" receive no training whatsoever concerning the shell companies' business and are often unaware of whether at a given time they are acting as an employee of Resurgent Capital, a representative of one of the shell companies, or both.

48.     Through the shell companies, Resurgent Capital purchases large portfolios of

6

charged-off consumer debt from banks for pennies on the dollar.  Such portfolios rarely include account-level documentation, such as credit agreement signed by consumers, providing competent proof that the consumers actually owe the amount attributed to each consumer.

49.     At the exact same time that the portfolio is purchased, the shell companies literally simultaneously "sell" the portfolios to each other using a bogus document entitled "Transfer and Assignment."  The Transfer and Assignment documents, used and reused over multiple years, appear at first glance to be legitimately hand-signed agreements between the shell companies. However, a closer examination reveals that the documents are "robo-signed," with identical facsimile signatures used on many documents spanning multiple years.  The signatures are printed in different colors in an attempt to make the observer believe they are legitimate hand-signed documents. They are not.  These "purchases" are bogus, meant only to confuse consumers as to whom they may owe money and to insulate Resurgent Capital, rather than bona fide, arm's length transactions.

50.     Nevertheless, based on these bogus agreements, LVNV and the other shell companies flood Tennessee State Courts, including this Court, with tens of thousands of lawsuits claiming Tennessee consumers owe them money.

51.     This is the same tortured process that Plaintiff's account with Synchrony endured. Upon information and belief, one of the shell companies, most likely Sherman Originator, "purchased" a large portfolio of charged-off consumer debt from Synchrony for pennies on the dollar.  Such portfolio presumably included Plaintiff's name, but failed to include account-level documentation, such as a credit agreement signed by Plaintiff for the amount sought.  Sherman Originator then, at the exact same time, "transferred, sold, assigned, conveyed granted and delivered" the portfolio to another shell company.  Then, again at the exact same time, that shell

company, in turn "transferred, sold, assigned, conveyed granted and delivered" the portfolio to the instant shell company, LVNV.  These "transactions" are all supposedly documented through the sham robo-signed "Transfer and Assignment" document.

52.     Indeed, Plaintiff was never indebted to LVNV for $9,166.72 and LVNV never extended credit to Plaintiff for $9,166.72.

53.     Plaintiff was never involved in any transaction with LVNV for $9,166.72 and never entered into any contract with LVNV for the payment of $9,166.72.

54.     Upon information and belief, RCS does not possess competent proof that Plaintiff owes $9,166.72 to LVNV.

55.     Upon information and belief, LVNV does not possess competent proof that Plaintiff owes it $9,166.72.

56.     Upon information and belief, RCS does not possess any credit agreement between Plaintiff and LVNV for $9,166.72.

57.     Upon information and belief, LVNV does not possess any credit agreement between it and Plaintiff for $9,166.72.

58.     Upon information and belief, RCS does not possess competent proof that Plaintiff agreed to pay $9,166.72 to LVNV.

59.     Upon information and belief, LVNV does not possess competent proof that Plaintiff agreed to pay it $9,166.72.

60.     Upon information and belief, RCS does not possess any competent proof that Plaintiff is obligated to pay $9,166.72 to LVNV.

61.     Upon information and belief, LVNV does not possess any competent proof that Plaintiff is obligated to pay it $9,166.72.

62.     Upon information and belief, RCS does not possess any competent proof that $9,166.72 was ever owed by Plaintiff to LVNV.

63.     Upon information and belief, LVNV does not possess any competent proof that $9,166.72 was ever owed to it by Plaintiff.

64.     Upon information and belief, RCS does not possess any competent proof that Plaintiff owed $9,166.72 at the time LVNV purchased the portfolio of debt.

65.     Upon information and belief, LVNV does not possess any competent proof that Plaintiff owed $9,166.72 at the time LVNV purchased the portfolio of debt.

66.     RCS holds no legal right, title or interest in $9,166.72 owed by Plaintiff.

67.     LVNV holds no legal right, title or interest in $9,166.72 owed by Plaintiff.

68.     Nevertheless, in its efforts to collect the money, LVNV hired or otherwise retained RCS for the purposes of collecting the money from Plaintiff.

69.     As part of its utilization of RCS, LVNV conveyed information concerning Plaintiff and the alleged debt to RCS by electronic means.

70.     The information conveyed by LVNV to RCS, which, upon information and belief, was viewed by employees of RCS, contained Plaintiff's personal and private information including personal identifying data, among other things.

71.     Then, RCS decided to contact Plaintiff via written correspondence in an attempt to collect the alleged debt.

72.     The letter, dated June 3, 2022, was received and read by Plaintiff.

73.     The letter was the initial written communication Plaintiff received from RCS for the alleged debt.

74.     Plaintiff also received an undated letter from RCS.

9

75.     The undated letter was received and read by Plaintiff.

76.     Like the initial letter, the undated letter demanded payment from Plaintiff.

77.     The undated letter stated, "We are trying to collect a debt that you owe to LVNV Funding LLC."

78.     In fact, Plaintiff does not owe LVNV the money RCS was attempting to collect from Plaintiff.

79.     RCS's statement that Plaintiff owed the alleged debt to LVNV is false, misleading and/or deceptive.

80.     That undated letter was received and read by Plaintiff.

81.     The undated letter, in the relevant part, stated, "As of February 10, 2019 you owed," then provided an amount of $9,166.72.

82.     Then, the undated letter stated, "Between February 10, 2019 and today," then listed the amount of interest, fees, payments, and credits.

83.     Plaintiff was misled as to the status of the subject debt, for the letter was not associated with a particular date.

84.     In light of the fact that the letter was undated, Plaintiff was confused what date is "today."

85.     It is standard and common practice to date letters, especially those involving official or financial matters.

86.     Any letter that lacks a date appears to be illegitimate.

87.     Consumers cannot make a decision to pay an alleged debt, without trusting the debt collector, such as RCS.

88.     Failing to date the letter makes RCS's letter appear incorrect, inaccurate,

misleading, confusing, and/or deceptive, triggering the consumer to question the legitimacy of debt collector's attempts to collect the alleged debt.

89.     Failure of RCS to date the letter, but still attempt to collect the alleged debt, is inconsistent and out of character for legitimate debt collection practices, making a consumer believe there is something nefarious at play.

90.     RCS's failure to date the letter, which amounts to an intentional or negligent omissions, raises suspicion regarding its debt collection practice in general.

91.     Under § 1692g(a) of the FDCPA, within five days of an initial communication with a consumer, a debt collector must provide a written notice, known as a "Validation Notice," that contains relevant information about the alleged debt and how to dispute it.

92.     Pursuant to the FDCPA § 1692g(a), the debt collector must:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1)     the amount of the debt;
>
> (2)     the name of the creditor to whom the debt is owed;
>
> (3)     a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4)     a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5)     a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

93.     Pursuant to Regulation F of 12 CFR § 1006.34(b)(5) "Validation period means the period starting on the date that a debt collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information. For purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is at least five days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays) after the debt collector provides it.

94.     The undated letter states, in the relevant part, "**Call or write to us by July 8, 2022, to dispute all or part of the debt.** If you do not, we will assume that our information is correct."

95.     The undated letter provided Plaintiff a deadline of July 8, 2022, to dispute the alleged debt, request validation, and/or request the name and address of the original creditor.

96.     Upon information and belief, the deadline for Plaintiff to dispute the alleged debt and/or request validation is not July 8, 2022, as the letter is undated.

97.     Upon information and belief, the deadline for Plaintiff to dispute the alleged debt and/or request validation is a later date as the letter is undated.

98.     Plaintiff became confused as to his dispute and validation rights.

99.     The undated letter provides a dispute and validation deadline that is contrary to the Validation Notice of the FDCPA.

100.    Pursuant to the 15 U.S.C. § 1692g(b), in the relevant part, "…Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

101.    By providing a validation deadline date of July 8, 2022, RCS overshadowed

Plaintiff's rights.

102.    By providing a validation deadline date of July 8, 2022, RCS does not provide Plaintiff the full thirty days.

103.    By providing a validation deadline date of July 8, 2022, RCS shortened the requisite validation period.

104.    The acts of Defendants as described in this Complaint were performed by Defendants or on Defendants' behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority.  As such, all references to Defendants in this Complaint shall mean Defendants or their owners, officers, agents, and/or employees.

105.    Defendants' conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from Defendants' conduct.

106.    Plaintiff justifiably fears that, absent this Court's intervention, Defendants will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debt and other alleged debts.

107.    Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted economic harm.

108.    Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff unwarranted harm to Plaintiff's credit rating.

109.    Plaintiff justifiably fears that, absent this Court's intervention, Defendants will ultimately cause Plaintiff to be sued.

110.    A favorable decision herein would serve to deter Defendants from further similar conduct.

### FIRST COUNT
### Violation of 15 U.S.C. §§ 1692c(b) and 1692f

111.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

112.    The Plaintiff is a "consumer" as that term defined by the FDCPA.

113.    RCS is a "debt collector" as that term is defined by the FDCPA.

114.    LVNV is a "debt collector" as that term is defined by the FDCPA.

115.    The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

116.    Each letter is a "communication" as that term is defined by the FDCPA.

117.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

118.    15 U.S.C. § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

119.    The third-party vendor does not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

120.    LVNV's conveyance of Plaintiff's personal and private information to RCS is a "communication" as that term is defined by the FDCPA.

121.    Plaintiff never consented to LVNV's communication with the third-party vendor concerning the alleged debt.

122.    Plaintiff never consented to LVNV's communication with the third-party vendor concerning Plaintiff's personal and/or confidential information.

123.    Plaintiff never consented to LVNV's communication with RCS concerning Plaintiff's personal and/or confidential information.

124.    Plaintiff never consented to LVNV's communication with anyone concerning the alleged debt or concerning Plaintiff's personal and/or confidential information.

125.    Upon information and belief, LVNV has utilized a third-party vendor for these purposes thousands of times.

126.    LVNV utilizes a third-party vendor in this regard for the sole purpose of maximizing its profits.

127.    LVNV utilizes a third-party vendor without regard to the propriety and privacy of the information which it discloses to such third-party.

128.    LVNV utilizes a third-party vendor with reckless disregard for the harm to Plaintiff and other consumers that could result from LVNV's unauthorized disclosure of such private and sensitive information.

129.    LVNV utilizes a third-party vendor with reckless disregard for Plaintiff's right to privacy.

130.    LVNV utilizes a third-party vendor with reckless disregard for Plaintiff's right against public disclosure of Plaintiff's private facts.

131.    LVNV violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's alleged debt to the third-party vendor.

132.    15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

133.    The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

134.    LVNV disclosed Plaintiff's private and sensitive information to the third-party vendor.

135.    LVNV violated 15 U.S.C. § 1692f when it disclosed Plaintiff's private and sensitive information to the third-party vendor.

136.    As relevant here, Congress enacted the FDCPA upon finding that existing laws and procedures for redressing invasions of individual privacy during the debt collection process were inadequate to protect consumers.  15 U.S.C. § 1692(a)-(b).

137.    Specifically, Congress sought to protect consumers from communications by debt collectors to third parties.  See S. Rep. No. 95-382, at 4 (1977) reprinted in U.S.C.C.A.N. 1695, 1698.

138.    As such, a violation of Section 1692c(b) has a close relationship to an invasion of privacy.

139.    A violation of Section 1692c(b) is an invasion of privacy.

140.    As described herein, LVNV violated Section 1692c(b).

141.    As described herein, LVNV invaded Plaintiff's privacy.

142.    A violation of Section 1692c(b) also has a close relationship to a public disclosure of private facts.

143.    A violation of Section 1692c(b) is a public disclosure of private facts.

144.    As described herein, LVNV violated Section 1692c(b).

145.    As described herein, LVNV publicly disclosed Plaintiff's private facts.

146.    For the foregoing reasons, LVNV violated 15 U.S.C. §§ 1692c(b) and 1692f and is liable to Plaintiff therefor.

**SECOND COUNT**
**Violation of 15 U.S.C. §§ 1692g, 1692g(a)(1) and 1692g(a)(2)**

147.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

148.    The Plaintiff is a "consumer" as that term defined by the FDCPA.

149.     RCS is a "debt collector" as that term is defined by the FDCPA.

150.     LVNV is a "debt collector" as that term is defined by the FDCPA.

151.     The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

152.     Each letter is a "communication" as that term is defined by the FDCPA.

153.     The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

154.     15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

155.     As relevant here, 15 U.S.C. § 1692g(a)(1) requires the written notice provide a statement of the amount of the debt.

156.     To comply with 15 U.S.C. § 1692g(a)(1), the statement of the amount of the debt must accurately set forth the actual amount of the debt.

157.     A statement of the amount of the debt, when the debt is not owed at all by the consumer, violates 15 U.S.C. § 1692g(a)(1).

158.     As previously stated, Plaintiff did not owe the amount RCS alleges is owed to LVNV by Plaintiff.

159.     As such, RCS did not accurately set forth the actual amount of the alleged debt as required by 15 U.S.C. § 1692g(a)(1).

160.     RCS's statement of the amount of the alleged debt, when Plaintiff did not owe that amount, violates 15 U.S.C. § 1692g(a)(1).

161.     As also relevant here, 15 U.S.C. § 1692g(a)(2) requires the written notice provide

a statement of the name of the creditor to whom the debt is owed.

162.    To comply with 15 U.S.C. § 1692g(a)(2), the statement of the name of the creditor to whom the debt is owed must accurately set forth the name of the entity that actually owns the debt.

163.    A statement of the name of the creditor to whom the debt is owed, when the consumer does not owe money to the stated entity, violates 15 U.S.C. § 1692g(a)(2).

164.    As set forth above, Plaintiff did not owe money to LVNV.

165.    As such, RCS did not accurately set forth the name of the entity that actually owns the debt as required by 15 U.S.C. § 1692g(a)(2).

166.    RCS's statement that LVNV was the name of the creditor to whom the alleged debt was owed, when Plaintiff did not owe any money to LVNV, violates 15 U.S.C. § 1692g(a)(2).

167.    For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692g, 1692g(a)(1) and 1692g(a)(2), and are liable to Plaintiff therefor.

### THIRD COUNT
### Violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10)

168.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

169.    The Plaintiff is a "consumer" as that term defined by the FDCPA.

170.    RCS is a "debt collector" as that term is defined by the FDCPA.

171.    LVNV is a "debt collector" as that term is defined by the FDCPA.

172.    The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

173.    Each letter is a "communication" as that term is defined by the FDCPA.

174.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

175.    15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in

conduct the natural consequence of which is to harass, abuse, and/or oppress.

176.    15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

177.    15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

178.    15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

179.    An allegation by a debt collector that a consumer owes a debt to a certain entity when the consumer does not owe a debt to that entity is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

180.    An allegation by a debt collector that a consumer owes a certain amount of money when the consumer does not that amount is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

181.    As previously stated in this Complaint, Plaintiff did not owe the amount RCS alleged is owed to LVNV by Plaintiff.

182.    Defendants' contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, amounts to conduct the natural consequence of which is to harass, abuse, and/or oppress in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692d.

183.    Defendants' contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false, misleading, and/or deceptive representation, in violation of 15 U.S.C. § 1692e.

184.    Defendants' contention that Plaintiff owed the alleged debt to LVNV, when

Plaintiff did not owe the alleged debt to LVNV, is a false representation of the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2)(A).

185.    Defendants' contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false representation or deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692e(10).

186.    The letter stated, "We are trying to collect a debt that you owe to LVNV Funding LLC."

187.    In fact, Plaintiff does not owe LVNV the money RCS was attempting to collect from Plaintiff.

188.    RCS's statement that Plaintiff owed the alleged debt to LVNV is false, misleading and/or deceptive.

189.    For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10) and are liable to Plaintiff therefor.

## FOURTH COUNT
## Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)

190.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

191.    The Plaintiff is a "consumer" as that term defined by the FDCPA.

192.    RCS is a "debt collector" as that term is defined by the FDCPA.

193.    LVNV is a "debt collector" as that term is defined by the FDCPA.

194.    The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

195.    Each letter is a "communication" as that term is defined by the FDCPA.

196.    The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

197.    15 U.S.C. § 1692c(a)(2) prohibits a debt collector from communicating with a

consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address…"

198.    The letter demanded payment from Plaintiff directly and was not sent to Plaintiff's attorney, despite the fact that RCS knew that Plaintiff was represented by counsel regarding the alleged debt, in violation of 15 U.S.C. § 1692c(a)(2) of the FDCPA.

199.    If Synchrony Bank did not provide LVNV Plaintiff's attorney's representation, LVNV could have merely inquired with Synchrony Bank and determined that Plaintiff was represented by counsel.

200.    If LVNV did not provide RCS Plaintiff's attorney's representation, RCS could have merely inquired with LVNV and determined that Plaintiff was represented by counsel.

201.    15 U.S.C. § 1692c(c) prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "If a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

202.    The letter demanded payment from Plaintiff directly and was not sent to Plaintiff's attorney, despite the fact that RCS knew that Plaintiff previously provided a written cease and desist from further communication directly, in violation of 15 U.S.C. § 1692c(c) of the FDCPA.

203.    For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c) and are therefore liable to Plaintiff.

## FIFTH COUNT
### Violation of 15 U.S.C. §§ 1692g(a) and § 1692g(b)

204.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

205.    The Plaintiff is a "consumer" as that term defined by the FDCPA.

206. RCS is a "debt collector" as that term is defined by the FDCPA.

207. LVNV is a "debt collector" as that term is defined by the FDCPA.

208. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

209. The undated letter is a "communication" as that term is defined by the FDCPA.

210. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

211. 15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

212. 15 U.S.C. § 1692g(a)(3) provides that the written notice must contain a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

213. The undated letter states, in the relevant part, "**Call or write to us by July 8, 2022, to dispute all or part of the debt.** If you do not, we will assume that our information is correct."

214. The undated letter provided Plaintiff a deadline of July 8, 2022, to dispute the alleged debt, request validation, and/or request the name and address of the original creditor.

215. Upon information and belief, the undated letter was not mailed on June 1, 2022.

216. Upon information and belief, the deadline for Plaintiff to dispute the alleged debt and/or request validation is not July 8, 2022.

217. Upon information and belief, the deadline for Plaintiff to dispute the alleged debt and/or request validation is a later date.

218. The undated letter provides a dispute and validation deadline that is contrary to the

Validation Notice of the FDCPA.

219.    Pursuant to the 15 U.S.C. § 1692g(b), in the relevant part, "…Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

220.    By providing a validation deadline date of July 8, 2022, RCS overshadowed Plaintiff's rights.

221.    By providing a validation deadline date of July 8, 2022, RCS does not provide Plaintiff the full thirty days.

222.    By providing a validation deadline date of July 8, 2022, RCS shortened the requisite validation period.

223.    As such, RCS did not accurately set forth the deadline for Plaintiff to dispute the alleged debt as required by 15 U.S.C. § 1692g(a)(3).

224.    Pursuant to the 15 U.S.C. § 1692g(b), in relevant part, "…Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

225.    Pursuant to Regulation F of 12 CFR § 1006.34(b)(5) "Validation period means the period starting on the date that a debt collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information. For purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is at least five days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and

Sundays) after the debt collector provides it."

226.   By providing a concrete deadline, not taking into consideration the FDCPA validation period, as well as 12 CFR § 1006.34(b)(3)(iv), RCS has shortened the requisite validation period and overshadowed Plaintiff's rights.

227.   For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692g, 1692g(a)(3), and 1692g(b), and are liable to Plaintiff therefor.

## <u>SIXTH COUNT</u>
### <u>Violation of 15 U.S.C. §§ 1692e, 1692e(10), and 1692f</u>

228.   Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

229.   Plaintiff is a "consumer" as that term is defined by the FDCPA.

230.   RCS is a "debt collector" as that term is defined by the FDCPA.

231.   LVNV is a "debt collector" as that term is defined by the FDCPA.

232.   The alleged debt is a "debt" as that term is defined by the FDCPA.

233.   The undated letter is a "communication: as that term is defined by the FDCPA.

234.   15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

235.   15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

236.   Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt", and underscores "the general application of" such prohibition.

237.   The undated letter, in the relevant part, stated, "As of February 10, 2019 you owed," then provided an amount of $9,166.72.

238.   Then, the undated letter stated, "Between February 10, 2019 and today," then listed

the amount of interest, fees, payments, and credits.

239.     Plaintiff was misled as to the status of the subject debt, for the letter was not associated with a particular date.

240.     In light of the fact that the letter was undated, Plaintiff was confused what date is "today."

241.     It is standard and common practice to date letters, especially those involving official or financial matters.

242.     Any letter that lacks a date appears to be illegitimate.

243.     Consumers cannot make a decision to pay an alleged debt, without trusting the debt collector, such as RCS.

244.     Failing to date the letter makes RCS's letter appear incorrect, inaccurate, misleading, confusing, and/or deceptive, triggering the consumer to question the legitimacy of debt collector's attempts to collect the alleged debt.

245.     Failure of RCS to date the letter, but still attempt to collect the alleged debt, is inconsistent and out of character for legitimate debt collection practices, making a consumer believe there is something nefarious at play.

246.     RCS's failure to date the letter, which amounts to an intentional or negligent omissions, raises suspicion regarding its debt collection practice in general.

247.     For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f and are liable to Plaintiff therefor.

## JURY DEMAND

248.   Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered as follows:

    a.   Finding RCS's actions violate the FDCPA; and

    b.   Finding LVNV's actions violate the FDCPA; and

    c.   Awarding damages to Plaintiff pursuant to 15 U.S.C. § 1692k; and

    d.   Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k, calculated on a "lodestar" basis; and

    e.   Awarding the costs of this action to Plaintiff; and

    f.   Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

    g.   Such other and further relief that the Court determines is just and proper.

Dated: June 2, 2023

**GARIBIAN LAW OFFICES, P.C.**

*/s/ Antranig Garibian*
By:    Antranig Garibian, Esq. (DE Bar 4962)
       Brandywine Plaza East
       1523 Concord Pike, Suite 400
       Wilmington, DE 19803
       (302) 722-6885
       ag@garibianlaw.com
       *Attorneys for Plaintiff, Joseph Coon*